UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARRIE L. SCHEUERMAN,

       Plaintiff,

    v.

CENTRAL STATES PENSION FUND,

       Defendant.

No. 23-CV-16245

Magistrate Judge McShain

**ORDER**

Pending before the Court[1] is defendant's motion to dismiss [12] plaintiff's complaint. The motion is fully briefed. [13, 21, 23].[2] For the following reasons, the motion is granted in part with prejudice and denied in part.

**Background**

In this case under Title VII of the Civil Rights Act of 1964, Plaintiff Carrie Scheuerman alleges that her former employer, Defendant Central States Southeast and Southwest Areas Health and Welfare and Pension Funds, discriminated against her on the basis of religion by refusing her request for a religious accommodation and terminating her employment.

Plaintiff began working for defendant in 2000. [1] ¶ 12. In response to the COVID-19 pandemic, defendant implemented a temporary work from home policy for its employees in March 2020. [*Id.*] ¶ 13. In June of 2021, defendant enacted a COVID-19 Vaccination Policy that required employees to receive the COVID-19 vaccine by August 13, 2021. [*Id.*] ¶¶ 14, 16. *See* [13-1] 4–8 (copy of COVID-19 vaccination policy). The policy included an exception for religious accommodations and provided a process for requesting a religious exemption. [1] ¶ 15; [13-1] 6.

The complaint alleges that plaintiff "is a Christian who maintains sincerely held religious beliefs that human life is sacred; human life is a gift from God; and abortion is gravely wrong and contrary to the commandments and teachings of the

---

[1] The parties consented to the exercise of jurisdiction by Magistrate Judge McShain for all further proceedings [15].
[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Christian Bible." [1] ¶ 19. On July 12, 2021, plaintiff submitted a request for a religious exemption based on her sincerely held religious beliefs. [*Id.*] ¶ 20–21. *See* [13-1] 10–13 (copy of July 12, 2021 accommodation request). On July 30, 2021, defendant sent plaintiff a questionnaire seeking additional information, including whether she had received vaccines in the past and whether she had ever used manufactured medications. [1] ¶ 22; [13-1] 15–16. On August 9, 2021, plaintiff responded to the questionnaire and attached copies of several bible verses with highlighted passages. [1] ¶¶ 23–24; [13-1] 15–31. On August 13, 2021, defendant denied plaintiff's request for a religious accommodation and exemption from defendant's COVID-19 vaccine policy. [1] ¶ 26. The complaint alleges that defendant's denial stated that plaintiff did not provide a reason as to why previously receiving vaccines or taking manufactured medications in the past was different from getting the COVID-19 vaccine. [*Id.*]

The complaint alleges that when it denied plaintiff's accommodation request, defendant directed plaintiff to receive the COVID-19 vaccine within seven days. [*Id.*] 26. The complaint alleges that defendant stated that if plaintiff was not vaccinated within seven days, she would be denied the ability to work at the office, she would no longer be able to work from home, and defendant would terminate plaintiff once she reached the maximum number of unexcused absences. [*Id.*] Plaintiff did not receive the COVID-19 vaccine. [*Id.*] ¶ 31. On March 31, 2022, defendant issued plaintiff a "non-Compliant Employee – First Amended Vaccination Policy" memo. [*Id.*] ¶ 32. On May 20, 2022, defendant terminated plaintiff's employment. [*Id.*] ¶ 34.

Plaintiff filed suit against defendant for unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a), claiming that defendant failed or refused to provide plaintiff with a reasonable accommodation of her sincerely held religious beliefs. [*Id.*] ¶ 35. The complaint alleges that plaintiff is a Christian who believes the use of vaccines developed and/or tested using cell lines derived from aborted fetuses violates the commandments and teachings of her religion, and that defendant's requirement that plaintiff receive the COVID-19 vaccination conflicted with her sincerely held religious beliefs. [*Id.*] ¶¶ 36–37. The complaint alleges that defendant knew that plaintiff's religious beliefs conflicted with its requirement that she receive the COVID-19 vaccine and that defendant took adverse employment action against plaintiff because she failed to comply with its requirement that she receive the vaccine. [*Id.*] ¶¶ 38–39.

Defendant now moves to dismiss the complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff fails to plead facts sufficient to state a claim for religious discrimination under Title VII because plaintiff did not communicate a sincerely held religious belief to defendant that would prevent her from receiving a COVID-19 vaccine. [13] 5, 9.

### Legal Standard

A complaint must provide a "short and plain statement of the claim" showing that plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits." *Sloan v. Anker Innovations Ltd.*, No. 22 CV 7174, 2024 WL 935426, at *2 (N.D. Ill. Jan. 9, 2024). "In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor." *Id.* (citing *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016)). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### Discussion

**A.  The Court will consider the parties' extrinsic documents without converting the motion to dismiss into a motion for summary judgment.**

Defendant attaches three documents as exhibits in support of its motion to dismiss: (1) defendant's mandatory COVID vaccination policy; (2) a copy of plaintiff's initial accommodation request from June 12, 2021; and (3) plaintiff's subsequent submissions from August 9, 2021. [13-1]. Defendant asserts that the Court may consider these extraneous documents without converting its motion into one for summary judgment because plaintiff's complaint repeatedly cites defendant's COVID-19 vaccination policy and because both the policy and plaintiff's accommodation request form are integral/central to her claims and allegations. [13] 6 nn. 1–2.

Plaintiff's opposition brief does not mention whether the Court should consider these extraneous documents or whether the motion to dismiss should or should not be converted into a motion for summary judgment. But plaintiff does provide her own attached documents, and plaintiff's Exhibits 1, 2, and 3 are the same as defendant's Exhibits 2 and 3. [21-1] 2–22. The additional extrinsic document plaintiff includes is a copy of her EEOC determination. [*Id.*] 23–24.

"Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations of the complaint." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (citing *Gen. Elec. Cap. Corp. v. Lease*

3

*Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). "If a court considers 'matters outside the pleadings,' the 'motion must be treated as one for summary judgment.'" *Id.* (quoting Fed. R. Civ. P. 12(d)). *See also Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000) (explaining that under Federal Rule of Civil Procedure 12(d), "the district court [i]s obligated to either not consider the extraneous submissions in ruling on the motion or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials"). However, the incorporation-by-reference doctrine provides an exception to this general rule, allowing courts to "consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Id.* (citing *Gen. Elec.*, 128 F.3d at 1080; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) ("It is 'well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'") (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).[3] "The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (alterations in original) (quoting *Tierney*, 304 F.3d at 738). *See also Fin. Fiduciaries*, 46 F.4th at 663 ("This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case."); *Robinson v. Crot*, No. 23 CV 14805, 2024 WL 1603485, at *1 (Apr. 12, 2024) (same).

"This rule is a liberal one—especially where, as here, the plaintiff does not contest the validity or authenticity of the extraneous materials." *Mueller*, 880 F.3d at 895. *See also Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), abrogated on other grounds by *Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023) ("This court has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases."). Not only does plaintiff not raise any opposition to defendant's reliance on these documents or comment about whether the Court should convert the motion to dismiss into a motion for summary judgment, but plaintiff attaches and relies on the same documents. *See Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) ("A plaintiff opposing a Rule 12(b)(6) motion to dismiss may submit evidence to illustrate allegations without turning that motion into a Rule 56(a) motion for summary judgment."). Furthermore, the Court finds that defendant's COVID-19 vaccination policy, plaintiff's June 2021 accommodation/exemption request, and

---

[3] *See also Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) ("A defendant filing a motion under Rule 12(b)(6) or 12(c) can base its motion on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'") (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *Line Constr. Benefit Fund v. Asomeo Env't Restoration Indus., LLC*, 688 F.Supp.3d 727, 733 n.4 (N.D. Ill. 2023) ("Although courts are generally prohibited from considering documents outside the pleadings when deciding a motion to dismiss, '[d]ocuments attached to a motion to dismiss' may be considered 'if they are referred to in the plaintiff's complaint and are central to his claim.'") (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)).

plaintiff's supplemental responses to defendant's follow-up questionnaire are all referenced in plaintiff's complaint and central to plaintiff's claim. Accordingly, the Court will consider these extrinsic documents without converting defendant's motion to dismiss into a motion for summary judgment.

### B.     Plaintiff's Failure to Accommodate Claim

Title VII makes it unlawful for an employer to discriminate against employees based on religion. 42 U.S.C. § 2000e–2(a). "As originally enacted, Title VII did not spell out what it meant by discrimination 'because of ... religion,' but . . . the EEOC settled on a formulation that obligated employers 'to make reasonable accommodations to the religious needs of employees' whenever that would not work an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 457 (2023) (quoting 29 C.F.R. § 1605.1 (1968)). *See* 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.").

Plaintiff's complaint alleges that defendant discriminated against her by failing or refusing to accommodate her sincerely held religious beliefs and by terminating her employment. [1] 1, ¶¶ 35–40. To make out a *prima facie* case for failure to accommodate religion under Title VII, "an employee must demonstrate that: (1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), vacated on other grounds, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023) (citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772–73 (2015); *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013)).[4]

Defendant moves to dismiss the complaint for failure to state a claim upon which relief may be granted because plaintiff cannot plead a claim for religious discrimination. Specifically, defendant argues that plaintiff objected to defendant's vaccination policy for secular reasons, plaintiff did not articulate a *sincerely held* religious belief, and plaintiff did not notify defendant at the time of the accommodation request that a basis for her religious objection was that her religion

---

[4] *See Baraona v. Vill. of Niles*, 2024 WL 1013968, at *9 n.4 (N.D. Ill. Mar. 8, 2024) (noting that "the Seventh Circuit did not express disapproval of its articulation of the elements of a *prima facie* case in *Kluge*"); *Kosenka-Pistell v. Cook Cnty.*, 2023 WL 6936800, at *1 (N.D. Ill. Oct. 3, 2023) (applying the elements in *Kluge* because the 7th Circuit vacated *Kluge* based on *Groff v. DeJoy*, 600 U.S. 447 (2023), which articulated a new framework for "undue hardship," and the question of undue hardship was not at issue).

opposed the use of vaccines that were developed or tested using cell lines derived from aborted fetal cells. [13] 10–18. Defendant also argues that the Court should dismiss the complaint with prejudice because plaintiff cannot assert any new or different allegations that would clarify the request submitted in 2021 to defendant and, therefore, any amendment would be futile. [*Id.*] 18–19.

### 1. An Observance or Practice that is Religious in Nature

Defendant argues that plaintiff objected to defendant's COVID-19 vaccination policy for personal, moral, and medical reasons rather than religious ones. [13] 11. Defendant questions plaintiff's statement that she is unable to receive "certain vaccines" and asserts that plaintiff relies on isolated teachings to support her statement that injecting her body with a COVID-19 vaccine would defile her body. [*Id.*] 14, 16 (citing [1] ¶¶ 21, 25). Defendant argues that neither the complaint nor plaintiff's request for an exemption and subsequent submission cite a religious tenet that conflicts with defendant's vaccine policy: "Existential references to 'spiritual healing' and a myriad of bible verses in Plaintiff's submissions do not instill Title VII's protection on an otherwise personal or medical objection." [*Id.*] 16.

The question of whether plaintiff has pled an observance or practice that is *religious* in nature and that is based on a sincerely held *religious* belief "is important because only *religious* beliefs, observances, and practices must be accommodated." *Adeyeye*, 721 F.3d at 451 (emphasis in original). *See Snyder v. Chi. Transit Auth.*, No. 22 CV 6086, 2023 WL 7298943, at *7 (N.D. Ill. Nov. 6, 2023) ("Nevertheless, the court must distinguish between religious belief and other matters of personal conviction, because only religious beliefs warrant the heightened protection of Title VII."). As noted, the statutory definition of "'religion' includes all aspects of religious observance and practice, as well as belief[.]" 42 U.S.C.A. § 2000e(j). And in interpreting this broad definition, the Seventh Circuit has "provide[d] a helpful definition of religion: The test 'is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God.'" *Adeyeye*, 721 F.3d at 448 (quoting *United States v. Seeger*, 380 U.S. 163, 165–66 (1965)). *See also Dockery v. Maryville Acad.*, 379 F.Supp.3d 704, 713–14 (N.D. Ill. 2019) (same).

Defendant cites several district court cases from around the country in support of the principles that Title VII does not protect requests for religious accommodation simply because they are couched in religious parlance, verses, and mantra, and that employees do not have a "blanket privilege" to unilaterally determine which vaccines to obtain and which vaccines to not obtain. [13] 12–16. From this circuit, defendant highlights a decision issued by Judge Bucklo as instructive, *Guthrie-Wilson v. Cook County*, No. 23-cv-362, 2023 WL 8372043 (N.D. Ill. Dec. 4, 2023), and likens plaintiff's religious accommodation request to the requests made in *Passarella v. Aspirus, Inc.*, Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023). [*Id.*] 12–13, 14–15.

6

While these district court cases are certainly helpful and relevant to the extent they contain persuasive reasoning, since defendant filed its motion to dismiss, the Seventh Circuit has weighed in on the matter. In reversing a district court decision that defendant likens to the instant case, the Seventh Circuit disagreed with the district court's conclusion that the plaintiffs' requests were 100% secular and emphasized that "the fact that an accommodation request also invokes or . . . even turns upon secular considerations does not negate its religious nature." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024). The Court explained that "[t]o conclude otherwise fails to give effect to Congress's expansive definition of 'religion' and, even more, denies that a matter of personal conviction can root itself in both religious and non-religious reasons." *Id.* Reviewing the body of Supreme Court precedent on the subject, the Seventh Circuit noted that a "more precise takeaway . . . is that a 'religious' objection can sound in *both* religious and non-religious terms," and acknowledged that its own precedent has "adhered to this same cautionary approach, including in interpreting Title VII." *Id.* at 1010–11 (emphasis in original) (collecting cases).

As applied to the facts of that case, the *Passarella* court concluded that the plaintiffs' pleadings survived a motion to dismiss:

> Passarella's and Dottenwhy's exemption requests satisfy this standard. Passarella's statement connects her objection to vaccination with her Christian beliefs regarding the sanctity of the human body. Although less robust in her articulation, Dottenwhy makes the same connection, as she expressly stated her Christian belief that the body is a "temple of the Holy Spirit" in tandem with concerns about the potentially harmful effects of the vaccine. In short, both exemption requests are based on their face and at least in part on a dimension of the plaintiffs' religious beliefs. This makes them—at least at the pleading stage—religious in nature within the meaning of Title VII.

*Id.* at 1009. "Perhaps above all else, then, one guidepost is clear: '[c]ourts should not undertake to dissect religious beliefs ... because [they] are not articulated with the clarity and precision that a more sophisticated person might employ.'" *Id.* at 1011 (alterations in original) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981)). "Nor should courts require employees to choose between the binary alternatives of a religious reason and non-religious reason to explain their perspective—here, their reason for seeking an exemption from mandatory COVID vaccination." *Id.*

Here, plaintiff's similar pleadings meet the low standard for plausibly alleging objections to defendant's COVID-19 vaccination policy that are religious in nature within the meaning of Title VII and sufficient to survive a motion to dismiss. The complaint alleges that in requesting a religious exemption, "[p]laintiff stated that her

7

body is a temple for the Holy Spirit and that she could not defile that temple with the COVID-19 vaccine[.]" [1] ¶ 21. The complaint alleges that in responding to defendant's requests for supplemental information and explaining why she received vaccines and used manufactured medications in the past, "[p]laintiff stated that she confessed her past sins and requested God's forgiveness," "that Jesus tells his followers that he 'forgives us and to go and sin no more,'" and "that she strived to be a better Christian with each day and that she strived not to commit past sins." [*Id.*] ¶¶ 23–24. Plaintiff also attached bible verses with highlighted passages to her supplemental submissions. [*Id.*] ¶ 24; [13-1] 17–31. The copy of plaintiff's June 2021 request for a religious exemption and accommodation supports these allegations:

> I am a Christian that believes in the Bible, including the teachings in the New Testament. I believe man is saved through Christ, through Truth, Life, and Love in healing the sick and overcoming sin & death. I follow the promises of Jesus including his promises of spiritual healing. I believe my body is a Temple for the Holy Spirit. I have a deeply held belief that injecting my body, my Temple for the Holy Spirit, with a vaccination, violates the principles laid out in His Word and his promise of spiritual healing. I believe life is in and of Spirit, not material and God is the only real power and heals disease spiritually as did Christ Jesus.

[13-1] 11. "[A] genuinely held belief that involves matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII." *Adeyeye*, 721 F.3d at 448 (citing *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005)).

Defendant's argument drifts into territory that is not appropriately addressed at the motion to dismiss stage, and "[i]f an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." *Passarella*, 108 F.4th at 1011. Under this circuit's liberal pleading standard, accepting as true all well-pleaded facts in plaintiff's complaint, and drawing all reasonable inferences from those facts in plaintiff's favor, plaintiff has sufficiently pled that the objections she raised in her request for a religious exemption from receiving the COVID-19 vaccine are religious in nature and based on plaintiff's religious beliefs.

Accordingly, the Court denies defendant's motion to dismiss on this ground.

    **2.**    **Sincerely Held**

Defendant argues that the Court should dismiss plaintiff's religious accommodation claim because plaintiff's complaint does not articulate a sincerely held religious belief. [13] 16–18. Defendant relies upon the guidelines issued by the EEOC during the COVID-19 pandemic to help employers evaluate religious

8

accommodation requests. [*Id.*] 16 (citing EEOC Compliance Manual Section 12: Religious Discrimination, EEOC-CVG-2021-3 (Jan. 15, 2021)).[5] Specifically, defendant points to the factors the EEOC identified as helping to evaluate whether an employee's religious beliefs are "sincerely held" and factors that might undermine an employee's credibility, including "whether the employee has acted in a manner inconsistent with the professed belief; whether the exemption sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons; whether the timing of the request renders it suspect; and whether the employer otherwise has reason to believe the exemption is not sought for religious reasons." [*Id.*] 16–17 (citing EEOC Compliance Manual Section 12-I.A.2: Sincerely Held).

Defendant argues that plaintiff's purported religious beliefs cannot satisfy this standard because "she only recently (and conveniently) modified her perspective on vaccines." [*Id.*] 17. Defendant points to plaintiff's past vaccination record and use of manufactured medications, asserting that plaintiff did not provide any details to defendant about what vaccines she previously received or medications she took, when those instances occurred, or why or when her actions or beliefs changed with respect to the COVID-19 vaccines. [*Id.*] Defendant also asserts that plaintiff did not explain why she could receive "certain vaccines," but not a COVID-19 vaccine. [*Id.*] (quoting [1] ¶ 25). According to defendant, these inconsistencies and "the apparent recency of changing her view as to the COVID-19 vaccines" indicate that plaintiff's beliefs are not sincere. [*Id.*]

The complaint alleges that plaintiff "is a Christian who maintains sincerely held religious beliefs" and that "[p]laintiff submitted a request for a religious exemption based on her sincerely held religious beliefs." [1] ¶¶ 19–20. The complaint also states that plaintiff "was required to and did certify that her religious beliefs were sincere when she submitted the accommodation request." [*Id.*] ¶ 21. *See* [13-1] 11. Furthermore, the complaint describes the answers plaintiff submitted in response to the follow-up questionnaire from defendant "questioning her sincerely held religious beliefs, asking if Plaintiff was ever vaccinated before, with what and when, and if Plaintiff ever previously took manufactured medications, what and when." [1] ¶¶ 22–25. The complaint alleges that plaintiff stated in her responses that she "received a vaccination when she was younger and that she had previously used manufactured medications," but that "she confessed her past sins and requested God's forgiveness" and "strived to be a better Christian with each day and that she strived not to commit past sins." [*Id.*] ¶¶ 23–24. The copy of plaintiff's responses to the questionnaire does not contradict these allegations in the complaint. *See* [13-1] 15–16.

It is true that a plaintiff must demonstrate the sincerity of her own religious beliefs, and there is much case law discussing evaluation of an employee's "sincerity." *See, e.g.*, *Adeyeye*, 721 F.3d at 451–54. But this case is only at the motion to dismiss

---

[5] Available at https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

stage, and "a plaintiff need not furnish evidence to survive a challenge to a complaint's legal sufficiency; a plaintiff need only show that the complaint contains the necessary allegations to state a claim." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 746 n. 1 (7th Cir. 2011); *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 377–78 (7th Cir. 2011)). *See also Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (emphasizing that "the factual allegations in the complaint need not prove the claim"). "If an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss." *Passarella*, 108 F.4th at 1011. Under this circuit's liberal pleading standard, accepting as true all well-pleaded facts in plaintiff's complaint, and drawing all reasonable inferences from those facts in plaintiff's favor, plaintiff has sufficiently pled that her request for a religious exemption from receiving the COVID-19 vaccine was "based on a sincerely held religious belief."

Accordingly, the Court denies defendant's motion to dismiss on this ground. The case "will now proceed to discovery, where [defendant], like any employer, will be permitted to develop evidence that the beliefs in question are not 'sincere' or even 'religious.'" *Passarella*, 108 F.4th at 1012.

### 3. Notice

In bringing a failure to accommodate claim, a plaintiff must also show that she "called the religious observance or practice to [the] employer's attention[.]" *Adeyeye*, 721 F.3d at 449 (alteration in original) (quoting *Porter*, 700 F.3d at 951). *See also Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978) ("The employee has the duty to inform his employer of his religious needs so that the employer has notice of the conflict."). It is clear that plaintiff has, in general, adequately pled that she called her religious practice and certain religious beliefs to defendant's attention when she submitted her request for a religious exemption from the COVID-19 vaccine requirement. *See, e.g.*, *Snyder*, 2023 WL 7298943, at *7 ("Snyder adequately alleges that he called his religious practice to the CTA's attention when he submitted his religious accommodation request.").

However, as defendant points out, the specific allegations in the complaint differ from the submissions plaintiff provided to defendant in seeking a religious accommodation in July and August of 2021. Defendant asserts that plaintiff alleges for the first time in her complaint that her refusal to receive a COVID-19 vaccine is based on her allegation that COVID-19 vaccines were "developed and/or tested using cell lines derived from aborted fetuses." [13] 10 (citing [1] ¶¶ 21, 25, 36). Defendant states that plaintiff did not raise this to defendant as an objection to the COVID-19 vaccine policy at the time she submitted her request for a religious accommodation/exemption. [*Id.*] (citing *Petermann v. Aspirus, Inc.*, No. 22-cv-332, 2023 WL 2662899, at *3 (W.D. Wis. Mar. 28, 2023)). In a case from the Western

District of Wisconsin, for example, the plaintiff raised a new allegation in her brief opposing the defendant's motion to dismiss that her Christian belief in the "Golden Rule" was a basis for an accommodation, but the court ruled that this new allegation failed because plaintiff did not "allege that she communicated her understanding of the Golden Rule to [defendant] *when she asked for an exemption.*" *Petermann*, 2023 WL 2662899, at *3 (emphasis added). Accordingly, defendant argues that plaintiff cannot plead that she provided notice to defendant of this particular sincerely held religious belief.

The complaint alleges that plaintiff stated the following information in her July 12, 2021 request for a religious accommodation:

> Plaintiff stated that her body is a temple for the Holy Spirit and that she could not defile that temple with the COVID-19 vaccine *on the grounds that COVID-19 vaccines were developed and/or tested using cell lines derived from aborted fetuses and receiving such a vaccine would violate Plaintiff's sincerely held religious beliefs, including her beliefs regarding the sanctity of human life.* She was required to and did certify that her religious beliefs were sincere when she submitted the accommodation request.

[1] ¶ 21 (emphasis added). The complaint states that plaintiff "is a Christian who maintains sincerely held religious beliefs that human life is sacred; human life is a gift from God; and abortion is gravely wrong and contrary to the commandments and teachings of the Christian Bible." [*Id.*] ¶ 19. The complaint also states that "[a]s a result and extension of her sincerely held religious beliefs described above, Plaintiff is unable, in good conscience, to receive certain vaccines, including but not limited to COVID-19 vaccines, that were developed or tested using cell lines derived from aborted fetuses" and that plaintiff "is a Christian who believes the use of vaccines developed and/or tested using cell lines derived from aborted fetuses violates the commandments and teachings of her religion." [*Id.*] ¶¶ 25, 36.

However, contrary to paragraph 21 of the complaint plaintiff's request for a religious accommodation submitted to defendant on July 12, 2021 did *not* include any information about religious beliefs involving or based on vaccines that are developed and/or tested using cell lines derived from aborted fetuses or the sanctity of human life. In explaining the sincerely held religious beliefs or practices that prohibited plaintiff from receiving a COVID-19 vaccine, plaintiff provided the following:

> I am a Christian that believes in the Bible, including the teachings in the New Testament. I believe man is saved through Christ, through Truth, Life, and Love in healing the sick and overcoming sin & death. I follow the promises of Jesus including his promises of spiritual healing. I believe my body is a Temple for the Holy Spirit. I have a deeply held

11

> belief that injecting my body, my Temple for the Holy Spirit, with a vaccination, violates the principles laid out in His Word and his promise of spiritual healing. I believe life is in and of Spirit, not material and God is the only real power and heals disease spiritually as did Christ Jesus.

[13-1] 11. And nowhere else on the religious accommodation request form did plaintiff include any mention of the use of vaccines developed and/or tested using cell lines derived from aborted fetuses. [*Id.*] 11–13.

Nor did plaintiff's subsequent submission mention her religious beliefs regarding the sanctity of human life or abortion and the use of vaccines developed/tested using cells lines from aborted fetuses. Plaintiff addressed defendant's question about previous vaccinations she had received and then added the following additional explanation of her religious beliefs:

> My body is a temple for the Holy Spirit. It is stated so in the Bible, "What! Know ye not that your body is in the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body and in your spirit which are God's." The Lord God tells us to touch no unclean thing and he will receive us, he will be a Father to us and we will be his sons and daughters. "Having therefore these promises, dearly beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God." It is also stated, "know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God him shall God destroy; for the temple of God is holy, which temple ye are." I believe in God, the Father Almighty, and I believe in his teachings. The Holy Bible is telling me that if I defile his temple, he will destroy me. Jesus tells us that if we will diligently listen to the voice of the Lord our God, and do that which is right in his eyes, and give ear to his commandments and keep all his statutes, he will put none of the diseases on us that he put on the Egyptians, for he is the Lord, our healer." I trust in the Lord as my healer and I have witnessed his power through faith.

[13-1] 15–16. Plaintiff also mentioned her "past offenses to God's temple" and "the sinful errors of [her] past use of unclean and unnatural substances including manufactured pharmaceuticals and vaccines." [*Id.*] 16. Although plaintiff's additional submission to defendant in support of her religious accommodation request explained her beliefs that her body is a temple and she should not touch any "unclean thing," it did not explicitly articulate her beliefs about the use of vaccines developed and/or tested using cell lines derived from aborted fetuses or the sanctity of human life. In

12

other words, plaintiff did not explain that these were the reasons the COVID-19 vaccine was "unclean" and would defile God's temple, *i.e.*, her body.[6]

Courts are repeatedly cautioned that they "should not undertake to dissect religious beliefs because the [employee's] . . . beliefs are not articulated with the clarity and precision that a more sophisticated person might employ." *Adeyeye*, 721 F.3d at 452–53 (quoting *Thomas*, 450 U.S. at 715). But this is not an instance of plaintiff's mere failure to articulate her religious beliefs and practices clearly and precisely. Rather, plaintiff's complaint now alleges religious beliefs and observances that she never brought to defendant's attention in her request for an exemption and accommodation or in her supplemental responses to defendant's follow-up questionnaire. As the Seventh Circuit has explained, "religion is not necessarily immediately apparent to others, and employers are 'not charged with detailed knowledge of the beliefs and observances associated with particular sects.'" *Id.* at 449–50 (quoting *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935–36 (7th Cir. 2003)). "As a result, an employee who wants to invoke an employer's duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict." *Id.* (citing *Reed*, 330 F.3d at 935–36). Defendant was not provided that information at the time of plaintiff's request and it was not a factor in defendant's decisions to deny plaintiff's religious accommodation request and to ultimately terminate her employment for failure to comply with the vaccine requirement. Plaintiff cannot raise that now after the fact in an attempt to clarify or bolster her claim of failure to accommodate based on religion.

Furthermore, plaintiff's opposition brief does not address this issue at all. Plaintiff offers no argument to rebut defendant's assertions that plaintiff did not provide defendant with fair notice of this particular religious belief and observance that prohibits plaintiff from complying with defendant's COVID-19 vaccination policy. By failing to respond to this challenge, plaintiff has accordingly waived any argument and plaintiff's "silence on this point can only be construed as a concession." *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 767 (N.D. Ill. 2021). *See, e.g.*, *Taylor v. McCament*, 875 F.3d 849, 855 n.3 (7th Cir. 2017) (noting the plaintiff's failure to respond to an argument by the defendants "waived any argument to the contrary"); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (considering an argument waived "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, &*

---

[6] The Court notes that although plaintiff attached several bible verses with highlighted passages to her response to the questionnaire, none of these verses plainly include "abortion" or "sanctity of life" and instead support the statements plaintiff did make in her supplemental response to defendant's questionnaire. *See* [13-1] 17–31. However, the Court makes no further comment and is mindful that "[c]ourts are not arbiters of scriptural interpretation." *Adeyeye*, 721 F.3d at 453 (quoting *Thomas*, 450 U.S. at 716). The only question before the Court is whether plaintiff sufficiently alleges that she called her religious beliefs, observance, or practices to defendant's attention.

*Unincorporated Ass'ns Identified on Schedule A Thereto*, No. 22 C 1801, 2022 WL 17451607, at *4 (N.D. Ill. Dec. 5, 2022) ("Indeed, Plaintiffs completely ignored the Moving Defendants' arguments as to the protectability of the claimed mark in their response, effectively conceding the point.").[7]

And as the Court has explored in detail, the complaint raises new allegations of plaintiff's religious beliefs and observance that "COVID-19 vaccines were developed and/or tested using cell lines derived from aborted fetuses" and to receive this vaccine would violate her religious beliefs that "abortion is gravely wrong and contrary to the commandments and teachings of the Christian Bible" which plaintiff never called to defendant's attention in requesting a religious exemption/accommodation. "[W]here an exhibit 'incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.'" *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F.Supp.3d 662, 673 (N.D. Ill. 2022) (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). *See also Bogie*, 705 F.3d at 609 ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party."); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls."). "That is not to say that a plaintiff cannot contradict the apparent meaning or significance of a document or other exhibit." *Bogie*, 705 F.3d at 609. "But a plaintiff whose case relies on contradicting such an attachment needs to explain her position." *Id.* Here, plaintiff has not even attempted to do so.

Accordingly, the Court grants this portion of defendant's motion and dismisses these specific fetal cell lines and abortion-related allegations from the complaint with prejudice. *See, e.g.*, [1] ¶¶ 19, 21, 25, 36. Plaintiff is prohibited from relying on these allegations to support her claim of failure to accommodate religion.

---

[7] *See also Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *Williams v. City of Chi.*, No. 22-cv-1084, 2022 WL 3716214, at *9 (N.D. Ill. Aug. 29, 2022); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016).

## Conclusion

For the foregoing reasons, defendant's motion to dismiss [12] plaintiff's complaint for failure to state a claim for relief is granted in part and denied in part. The Court concludes that plaintiff has sufficiently pled a claim of religious accommodation under Title VII.

However, the Court grants the motion as to the specific fetal cell lines and abortion-related allegations in the complaint. Such claims are dismissed with prejudice and plaintiff may not rely upon them to support her failure to accommodate religion claim.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 10, 2024**